UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

WILLIAM M. DEAN,

                              Petitioner,

-vs-

SUPERINTENDENT JOSEPH
H. NOETH,

                              Respondent.

_____

DECISION and ORDER

18-CV-6648 CJS

## INTRODUCTION

Petitioner William Dean ("Petitioner" or "Dean"), proceeding *pro se*, filed the subject petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in Ontario County Court, on March 29, 2011, for crimes including three counts of Burglary in the Second Degree.   Now before the Court is Respondent's Motion to Dismiss the Petition as untimely. (ECF No. 12).   For the reasons discussed below, Respondent's motion is granted and the petition is dismissed as untimely.

## BACKGROUND

Dean was convicted following a jury trial in Ontario County Court before the Honorable Craig J. Doran, County Court Judge ("Judge Doran").   The evidence introduced at trial, viewed in the light most-favorable to the Prosecution, established, among other things, that in April and May of 2010, Dean burglarized three residences, including one belonging to his brother Mark from which jewelry, cash and other items were stolen.   Mark suspected that Dean may have been the perpetrator, and alerted police that if Dean had committed the burglary, he might try to sell the stolen jewelry at a particular jewelry store in Rochester.   A police investigation found that Dean and his girlfriend had, immediately following the burglary at Mark's house, gone to that same jewelry store and sold a large amount of jewelry, including several items stolen from Mark's

house.  Dean was arrested and property stolen from the second burglarized residence, including DVDs and a bottle of pills that had been prescribed to the homeowner's husband, was found in Dean's car following the execution of a search warrant.[1]  Additionally, a credit card stolen from the third burglarized residence was used to purchase merchandise from a Walmart store, and Dean was arrested wearing a shirt matching the appearance of a shirt purchased with the stolen card.[2]  In sum, the prosecution presented a strong circumstantial case based primarily on Dean's possession of recently-stolen property from all three burglaries, along with evidence of motive and opportunity.[3]  The defense case consisted of just two witnesses, namely, Dean's mother, who attempted to provide alibis for him, and an investigator from the Public Defender's Office. The jury convicted Dean after deliberating only a few hours, and Dean was sentenced as a second felony offender to an aggregate sentence of twenty-one years in prison (later modified to nineteen years).

Dean subsequently filed an appeal and various state collateral attacks on his conviction, alleging that he was unfairly convicted for various reasons, including that he had alibis; that his brother lied about the burglary; that the shirt found in his possession did not match the description given by police of the shirt purchased with the stolen credit card; that some of the property found in his car did not match the property stolen from the second residence; that the police and prosecutor fabricated and withheld evidence; and that his attorney provided ineffective assistance of counsel.

---

[1] The second burglarized home, which had also been savagely vandalized, belonged to woman who was an acquaintance of Dean's girlfriend, with whom she had had a falling out.

[2] Store security footage from the Walmart indicated that the stolen card had been used by a white male and female whose faces were obscured by large hats.  However, Dean's girlfriend was later observed (in jail) wearing shoes matching those that had been worn by the female when the stolen credit card was used at Walmart, and she confirmed that she had been present at the Walmart when the purchases were made with the stolen card.

[3] As already noted, one of the burglarized homes belonged to Dean's brother, and another belonged to an estranged acquaintance of Defendant's girlfriend.

On August 13, 2018, Dean filed the subject habeas Petition,[4] which purports to assert ten separate grounds for relief.  Dean, proceeding *pro se*, used a form complaint for filing § 2254 habeas petitions. (ECF No. 1).  As relevant to the pending motion to dismiss, the form complaint directed Dean to list all "previously filed" "petitions, applications or motions . . . with respect to this judgement in any court, state or federal[.]"  In response to that direction Dean listed sixteen such "petitions, applications or motions," many of which he claimed were still "pending" years after they were filed.  For reasons that will become clear below, it is relevant to note that none of the sixteen "petitions, applications or motions" Dean listed was filed on either April 27, 2015 or May 15, 2016.  Dean signed the habeas petition on August 13, 2018.

On March 6, 2019, Respondent filed a motion to dismiss the petition as untimely, under the applicable one-year statute of limitations.[5]  Respondent's argument on this point may be summarized as follows: Dean's conviction became final (following his direct appeal and re-sentencing) on October 5, 2015; however, the limitations clock was immediately tolled, because there was still pending a state-court collateral attack (his second) pursuant to New York Criminal Procedure Law ("CPL") § 440.10 that he had filed on October 27, 2014; that motion was denied on June 1, 2016; the following day, June 2, 2016, the one-year limitations period began to run; the limitations clock then ran for 269 days, until February 25, 2017, when it was tolled because Dean filed a motion for writ of error *coram nobis*; that application was denied on November 8, 2017, and the limitations clock began to run again the following day, November 9, 2017; the limitations clock then ran un-interrupted for another 96 days, until it expired on February 13,

---

[4] This filing date is based on the prison "mailbox rule," not the ECF filing date of September 12, 2018.

[5] There is a "one-year limitations period provided by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2244(d)(1) (2015) ("AEDPA")." *Martinez v. Superintendent of E. Corr. Facility*, 806 F.3d 27, 29 (2d Cir. 2015), as corrected (Nov. 12, 2015).  "The statute of limitations runs from the latest of a number of triggering events, including the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," although, "[a] petitioner may secure equitable tolling of the limitations period in certain rare and exceptional circumstances." *Id.* at 31 (citations and internal quotation marks omitted).

2018; and Dean did not file this habeas action until six months later, on August 13, 2018. Respondent therefore contends that the petition is untimely by six months.   Respondent acknowledges that during the limitations period, Dean filed various NYCPLR[6] Article 78 ("Article 78") motions and Freedom of Information Law ("FOIL") requests seeking documents related to his case but contends that they did not toll the limitations clock.[7]   Respondent further contends that Dean is not entitled to equitable tolling.

Dean opposes the motion (ECF Nos. 25 & 26) [8] and primarily contends that the 1-year limitations period did *not* begin to run on June 2, 2016, contrary to what Respondent maintains. In that regard, June 1, 2016, is the date that the New York State Supreme Court, Appellate Division Fourth Department ("Appellate Division") denied Dean's motion for leave to appeal the trial court's denial of his second CPL § 440.10 motion.   Respondent argues that the limitations clock began running the next day, June 2, 2016, since New York law gave Dean no ability to appeal that determination.   Dean, however, contends that on June 22, 2016, he attempted to appeal the Appellate Division's ruling by filing a request for leave to appeal to the New York Court of Appeals, which was denied, on September 19, 2016, because "the order sought to be

---

[6] New York Civil Practice Law & Rules.

[7] *See, e.g., Collins v. Ercole*, 667 F.3d 247, 251–253 (2d Cir. 2012) (The tolling provision in 28 U.S.C. § 2244(d)(2) might possibly apply to an Article 78 proceeding that "seek[s] review of part or all of the pertinent judgment," but does not apply to one that does "not call the pertinent judgment into question."); *see also, id., 667 F.3d at 251, n. 5* (quoting the Supreme Court's decision in *Wall v. Kholi*, 131 S.Ct. 1278, 1286, n. 4 (2011), for the proposition that "motions "for post-conviction discovery . . . "are not direct requests for judicial review of a judgment and do not provide a state court with authority to order relief from a judgment.").

[8] On March 7, 2019, Dean filed a submission (Docket No. [#14]), which the Court liberally construed as a request for an opportunity to respond to the motion to dismiss.  In response, on March 26, 2019, the Court issued an Order [#16], granting Dean a 60-day extension, until May 24, 2019, to file a response to the motion to dismiss.  On May 20, 2019, Dean filed a letter request [#19], seeking an additional 30-day extension of time to file a response.  On June 19, 2019, the Court issued an Order (ECF No. 24) granting Dean's request and directing that his response to the motion to dismiss be field and served on or before August 17, 2019.  That same Order directed that Dean's "response shall not exceed twenty-five (25) pages total, typed and double spaced."  On July 19, 2019, Dean filed a response (ECF No. 26) in opposition to the motion to dismiss.  On July 22, 2019, a duplicate of Dean's response was filed. (ECF No. 25).  The Court received nothing further from Dean prior to the August 17, 2019, deadline for his response to the motion to dismiss.  The Court subsequently received a letter from Dean (ECF No. 27) indicating that his submissions in July 2019 comprised his response to the motion to dismiss, arguing that briefing on the motion to dismiss should be deemed closed, and requesting a ruling from the Court.

appealed from [was] not appealable under CPL 450.90(1)."[9]   Dean further contends that after

the Court of Appeals denied his request, he "challenge[d] the [Court of Appeals] Clerk's decision

to dismiss his application dated September 19, 2016, and [such challenge] was properly pending

before the Court of Appeals until November 28, 2016." ECF No. 25 at p. AF-2.   In sum, and

liberally construing Dean's papers, he maintains that the 1-year limitations clock was statutorily

stayed, pursuant to 28 U.S.C. § 2244(d)(2),[10] and did not begin to run until November 28, 2016,

at the earliest, due to his attempts to appeal the denial of his request for leave to appeal the

Appellate Division's denial of his second CPL § 440.10 motion.

Alternatively, Dean contends that the limitations period was stayed under § 2244(d)(2) by

other state post-conviction motions he filed.   In particular, those applications are as follows: 1) a

*coram nobis* motion which, as Respondent agrees, tolled the statute between February 25, 2017,

and November 8, 2017; 2) several Article 78 motions, FOIL applications and motions for

"contempt of court," all directed at obtaining allegedly-withheld *Brady* and *Rosario* materials and

other evidence;[11] 3) a "Motion for New Trial of Arrest of Judgment" filed with the Ontario County

Supreme Court on April 27, 2015, which is purportedly "still pending before said court";[12] 4) a

"Motion to Inspect Grand Jury Minutes and Dismiss Indictment Pursuant to NYS CPL § 210.20,"

allegedly filed with the Ontario County Supreme Court on May 15, 2016, that is purportedly "still

pending before the Court"; and 5) a third CPL § 440.10 motion, purportedly filed on May 4, 2018,

which is purportedly "still pending before the New York State Court of Appeals."[13]   Although, as

---

[9] *See*, Pet. at p.6 & addendum ¶ 20-B; see also, ECF No. 25 at p. 4 (AF-1) (The reader is advised that the ECF page numbering may not correspond to the page numbering on the original document).
[10] *See*, 28 U.S.C.A. § 2244 (West) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.").
[11] ECF No. 25 at pp. 5–6, 8, 9.
[12] ECF No. 25 at p. 8
[13] ECF No. 25 at p. 6, numbered paragraph 4 ("[H]e filed his CPL 440.10 motion papers on May 04, 2018, and after, to which had further halted the AEDPA to date and is still pending before the New York State Court of

noted earlier, Dean did not mention applications 3) and 4) in the Petition, despite having been directed to list all such motions therein.

Additionally, Dean contends that the limitations period should be equitably tolled since he "made several attempts in which to file said petition in a timely manner" but was prevented from doing so.[14]   In particular, Dean argues that in January 2018, officials at Attica Correctional Facility ("Attica") mishandled his request to provide him with inmate-account information that he needed to apply to file the subject Petition *in forma pauperis*.[15]   Specifically, he alleges that on January 15, 2018, he sent a certification request to officials at Attica, and on January 31, 2018, "the facility replied with further instruction and did not return the certification to petitioner as required pursuant to law."[16]   More generally, Dean argues that he was also stymied from pursuing his claims due to misconduct by police, the prosecutor and Judge Doran.  Dean alleges, for example, that police fabricated and withheld evidence, that the prosecutor failed to provide him with all the discovery to which he was entitled, and that Judge Doran improperly refused to allow him to file certain evidence-seeking state-court applications without payment of a filing fee.[17]

---

Appeals.").

[14] ECF No. 25 at p. 1.

[15] *See*, ECF No. 25 at p. 6, ¶ 4 and p. 7, ¶ 6.  (Dean asserts that he requested the information from Attica on January 15, 2018, and received a response on January 31, 2018).

[16] ECF No. 25 at p. 21.

[17] *See, e.g.,* ECF No. 25 at p. 15 (alleging that Judge Doran "denied [him] access to the courts."); *see also, id*. at pp. 18-19 (discussing alleged withholding of discovery and denial of access to the court), 21-23.  Dean essentially alleges that every government agency with whom he has dealt has acted improperly toward him. *See, id*. at pp. 20–21 (Alleging that the U.S. Department of Justice refused to comply with a 2016 FOIL request).

Finally, Dean maintains that he is actually innocent, which should excuse him from complying with the AEDPA filing deadline.[18]

The Court has considered the arguments of the parties and the entire record, including the voluminous exhibits attached to Dean's Petition and motion response.

DISCUSSION

Petitioner's *Pro Se* Status

Since Petitioner is proceeding *pro se*, the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

Petitioner's Application for Appointment of Counsel

Dean's opposition papers contain a cursory request for appointment of counsel.[19] Prisoners have no constitutional right to counsel when bringing collateral attacks upon their convictions. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  However, the Court may appoint counsel in the interests of justice to any person seeking relief pursuant to 28 U.S.C. § 2254 who is financially unable to obtain representation. 28 U.S.C. § 2254(h). The Court considers several factors in determining whether to assign counsel, including whether the indigent's claims seem likely to be of substance; whether the indigent is able to investigate the facts concerning his claim; whether the legal issues are complex; and whether there are special reasons why the appointment of counsel would be more likely to lead to a just determination. *See Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997); *Hodge v. Police Officers*, 802 F.2d 58 (2d Cir. 1986). The Court must consider the issue of appointment carefully because "every assignment of a

---

[18] *See*, ECF No. 25 at pp. 1, 9, 11 (references to innocence).
[19] *See*, ECF No. 25 at p. 12 ("I believe if the Court were to permit such relief as to assign an attorney to this matter it may be better stated and presented for this Court and for any other relief this Court may seem just and proper.").

volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." *Cooper v. A. Sargenti Co. Inc.*, 877 F.2d 170, 172 (2d Cir. 1989).

Having considered the relevant factors, the Court finds that appointment of counsel is not warranted here primarily, since Dean is a very experienced *pro se* litigator and has, based on his intimate knowledge of the long history of this action, competently presented the arguments for timeliness.  The application for appointment of counsel is therefore denied.

An Evidentiary Hearing is Not Required

Pursuant to Rule 8 of Rules Governing Habeas Corpus cases under Section 2254 in the United States District Courts and upon review of the Petition, motion papers and documents filed in this action, the Court determines that an evidentiary hearing is not required.

Section 2254 Principles

Petitioner brings this habeas corpus petition pursuant to 28 U.S.C. § 2254, and the general legal principles regarding the timeliness of such an application are well settled.

> A prisoner seeking habeas relief under section 2254 must generally file a petition within one year from the latest of four benchmark dates: (1) when the judgment of conviction becomes final; (2) when a government-created impediment to making such a motion is removed; (3) when the constitutional right asserted is initially recognized by the Supreme Court, if it has been made retroactively available to cases on collateral review; or (4) when the facts supporting the claim(s) could have been discovered through the exercise of due diligence. See 28 U.S.C. § 2244(d)(1)-(2).

*Karelefsky v. Brann*, No. 20-CV-9485 (JGK), 2022 WL 624424, at *3 (S.D.N.Y. Mar. 1, 2022).

> The one-year limitation period under AEDPA is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *Saunders* [*v. Senkowski*], 587 F.3d [543,] 548 [(2d Cir. 2009)]. The tolling provision "excludes time during which properly filed state relief applications are pending, but does not reset the date from which the one-year statute of limitations begins to run." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam). The tolling provision

excludes from the limitations period only the time that the state relief application remained undecided, including the time during which an appeal from the denial of the motion was taken. *Saunders*, 587 F.3d at 548; *Smith*, 208 F.2d at 16.

*Thomas-Jandrew v. Superintendent*, No. 921CV1293MADATB, 2022 WL 43784, at *2 (N.D.N.Y. Jan. 5, 2022).

However, not every type of post-conviction application that a defendant might file will toll the limitations period.  In particular, applications that do not challenge the underlying conviction, such as Article 78 proceedings seeking documents and FOIL requests, do not toll the AEDPA filing deadline. *See, e.g., Collins v. Ercole*, 667 F.3d 247, 251-253 (2d Cir. 2012) (The tolling provision in 28 U.S.C. § 2244(d)(2) might possibly apply to an Article 78 proceeding that "seek[s] review of part or all of the pertinent judgment," but does not apply to one that does "not call the pertinent judgment into question."); *see also, id.*, 667 F.3d at 251, n. 5 (quoting the Supreme Court's decision in *Wall v. Kholi*, 131 S.Ct. 1278, 1286, n. 4 (2011), for the proposition that "motions "for post-conviction discovery . . . "are not direct requests for judicial review of a judgment and do not provide a state court with authority to order relief from a judgment."); *see also*, *Stein v. Stallone*, No. 9:17-CV-0670 (BKS), 2019 WL 5578236, at *7 (N.D.N.Y. Oct. 29, 2019) ("The FOIL requests and related Article 78 petitions that petitioner filed between 2006 and 2014 seeking documents do not toll the limitations period. *See Hodge v. Greiner*, 269 F.3d 104, 107 (2d Cir. 2001).").

Furthermore, there can be extensions of the AEDPA's limitations period based on the doctrine of equitable tolling:

The AEDPA statute of limitations "does not set forth 'an inflexible rule requiring dismissal whenever' its 'clock has run.'" *Holland v. Florida*, —— U.S. ——, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010) (quoting *Day v. McDonough*, 547 U.S. 198, 205, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006)). Indeed, in *Holland* the Supreme Court concluded, as had all eleven Courts of Appeals to consider the

question, that § 2244(d) "is subject to equitable tolling in appropriate cases." *Id*. The Court went on to conclude that § 2244(d) may be tolled "only if [the petitioner] shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, —— U.S. ——, 130 S.Ct. 2549, 2560–62, 177 L.Ed.2d 130 (2010) (internal quotation marks omitted).

*Dillon v. Conway*, 642 F.3d 358, 362 (2d Cir. 2011).

Additionally, there can be an exception to the AEDPA filing deadline where a habeas petitioner makes a "gateway showing of actual innocence."[20] *See, Hyman v. Brown*, 927 F.3d 639, 643 (2d Cir. 2019) ("[T]he law affords another narrow 'gateway' to merits review of defaulted claims for habeas petitioners who can make credible and compelling showings of actual innocence."). The standard for this exception, though, is intentionally quite demanding and rarely met:

> "[C]oncern about the injustice that results from the conviction of an innocent person has long been at the core of our criminal justice system," both state and federal. [*Schlup v. Delo*, 513, U.S.] 325, 115 S.Ct. 851 [(1995)]. But within that system, "trial is the paramount event for determining the guilt or innocence" of an accused. *Herrera v. Collins*, 506 U.S. 390, 416, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). An accused enters trial with "a presumption of innocence" and a right to "insist that his guilt be established beyond a reasonable doubt." *Id*. at 398, 113 S.Ct. 853. Once guilt is so established, however, a federal habeas court will not relitigate the question of guilt for a state defendant who protests his actual innocence. *See Rivas v. Fischer*, 687 F.3d at 540 & n.34 (observing that Supreme Court "has never explicitly recognized the existence of a freestanding actual innocence claim"). Rather, a federal habeas court will review state convictions for constitutional error. *See* 28 U.S.C. § 2254.20
>
> The law, nevertheless, affords an actual innocence gateway claim because "the existence of a concededly meritorious constitutional violation is not in itself

---

[20] An "actual innocence" claim is not a free-standing substantive claim, but a procedural exception to a procedural default. *See, Hyman v. Brown*, 927 F.3d 639, 655 (2d Cir. 2019) ("Hyman's actual innocence claim plays a 'procedural, not substantive' role in this case. *Rivas v. Fischer*, 687 F.3d at 541. Even if successful, the claim cannot itself afford Hyman habeas relief from his state conviction. It can only open a gateway to federal review of an otherwise procedurally barred Sixth Amendment claim that, if itself successful, could afford him relief. *See Schlup v. Delo*, 513 U.S. at 314, 115 S.Ct. 851.").

sufficient ... [to] allow a habeas court to reach the merits of a barred claim." *Schlup v. Delo*, 513 U.S. at 316, 115 S.Ct. 851. Usually, that bar will be lifted only if a petitioner demonstrates good cause to excuse his default and ensuing prejudice.[21] *See House v. Bell*, 547 U.S. at 536, 126 S.Ct. 2064 (collecting cases). Even in the absence of that showing, however, the law recognizes that, in a "narrow class of cases," there remains the risk of "a fundamental miscarriage of justice" if the defaulted constitutional claim is not heard. *Schlup v. Delo*, 513 U.S. at 315, 115 S.Ct. 851 (internal quotation marks omitted). That narrow class of "truly extraordinary" cases consists of those presenting credible and compelling claims of actual innocence. *Id.* at 338, 115 S.Ct. 851; *see Herrera v. Collins*, 506 U.S. at 404, 113 S.Ct. 853 ("[F]undamental miscarriage of justice exception[ ] is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons."); *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (limiting "miscarriage of justice" exception to "extraordinary case[s], where a constitutional violation has probably resulted in the conviction of one who is actually innocent"). Thus, a state prisoner who "seek[s] access to a federal habeas court in the face of a procedural obstacle," and who cannot overcome that obstacle by showing cause and prejudice, "must advance both a legitimate constitutional claim and a credible and compelling claim of actual innocence." *Rivas v. Fischer*, 687 F.3d at 540 (emphases in original).

The petitioner's burden in making a gateway showing of actual innocence is deliberately "demanding." *House v. Bell*, 547 U.S. at 538, 126 S.Ct. 2064; *see Schlup v. Delo*, 513 U.S. at 324, 115 S.Ct. 851 (observing that actual innocence claims are rarely successful); *accord McQuiggin v. Perkins*, 569 U.S. 383, 386, 401, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013) ("stress[ing] that the *Schlup* standard is demanding" and cases satisfying it "rare"). It requires, first, that petitioner adduce "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. at 324, 115 S.Ct. 851. In addition to being reliable, *i.e.*, credible, the evidence must be compelling. This second requirement demands "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 316, 115 S.Ct. 851; *accord Rivas v. Fischer*, 687 F.3d at 541.21

The standard's demand for "evidence of innocence," *Schlup v. Delo*, 513 U.S. at 316, 115 S.Ct. 851 (emphasis added), references "factual innocence, not mere legal insufficiency," *Bousley v. United States*, 523 U.S. 614, 624, 118 S.Ct. 1604,

---

[21] Here, Dean has not argued or attempted to show both good cause and prejudice for his late filing.

140 L.Ed.2d 828 (1998); *accord Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002); *see also Doe v. Menefee*, 391 F.3d 147, 162 (2d Cir. 2004) (Sotomayor, J.) ("As *Schlup* makes clear, the issue before [the] court is not legal innocence but factual innocence."). The new evidence need not demonstrate factual innocence to an "absolute certainty." *House v. Bell*, 547 F.3d at 538; *accord Rivas v. Fischer*, 687 F.3d at 542. But it must be sufficiently credible and compelling to allow a federal court to conclude that "more likely than not, in light of the new evidence, no reasonable juror would find [petitioner] guilty beyond a reasonable doubt—or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." *House v. Bell*, 547 U.S. at 538, 126 S.Ct. 2064; *see Schlup v. Delo*, 513 U.S. at 327, 115 S.Ct. 851; *Rivas v. Fischer*, 687 F.3d at 541.

As this court has recognized, this standard is "somewhat cryptic" in marrying a seemingly absolute requirement (no reasonable juror) to a probabilistic one (more likely than not). *Rivas v. Fischer*, 687 F.3d at 541 (citing *Schlup v. Delo*, 513 U.S. at 339, 115 S.Ct. 851 (Rehnquist, C.J., dissenting) (characterizing standard as "classic mixing of apples and oranges")). Nevertheless, this court has located some guidance for its application in contrasts that the Supreme Court has drawn between the *Schlup* standard and other familiar ones. *See id*.

Notably, *Schlup* emphasizes that "actual innocence ... does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." 513 U.S. at 329, 115 S.Ct. 851. Further, a "more likely than not" showing as to what "no reasonable juror would have found" requires "a stronger showing than that needed to establish prejudice," but not so strong as that demanded by the "'clear and convincing' standard." *Id*. at 327, 115 S.Ct. 851; *see Rivas v. Fischer*, 687 F.3d at 541.22

Further, the Court has stressed that *Schlup*'s actual innocence standard does not equate to the sufficiency-of-the-evidence standard in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *Jackson* asks whether the trial evidence, viewed in the light most favorable to the prosecution, "could" allow any reasonable trier of fact to find a charged crime proved beyond a reasonable doubt. *Id*. By contrast, *Schlup*'s actual innocence standard considers a different "mix of evidence" from a different "vantage point." *Rivas v. Fischer*, 687 F.3d at 542. Specifically, a reviewing court assessing the probability of actual innocence is not limited to the trial record. To the contrary, it "must consider all the evidence, old and new, incriminating and exculpatory," *House v. Bell*, 547 U.S. at 538, 126 S.Ct. 2064 (internal quotation marks omitted), and, in doing so, "is not bound by the rules of admissibility that would govern at trial," *Schlup v. Delo*, 513 U.S. at 327, 115

S.Ct. 851. This is because, at the gateway stage of inquiry, a habeas court's task is not to identify trial error or to delineate the legal parameters of a possible new trial. It is to identify those cases in which a compelling showing of actual innocence would make it a manifest injustice to maintain conviction unless it was free of constitutional error. Thus, incriminating evidence obtained in the course of an unlawful search, or custodial admissions made in the absence of *Miranda* warnings, may well be inadmissible at trial. Nevertheless, such evidence is properly considered in assessing factual innocence, with the manner of procurement informing reliability and relevance and, therefore, weight.

*Hyman v. Brown*, 927 F.3d 639, 655–58 (2d Cir. 2019) (emphasis added); *see also, Doe v. Menefee*, 391 F.3d 147, 162 (2d Cir. 2004) ("Once it has been determined that the new evidence is reliable, *Schlup* unequivocally requires that reviewing courts consider a petitioner's claim in light of the evidence in the record as a whole[.]").

Such a showing of actual innocence may excuse the failure to comply with the AEDPA's one-year filing requirement. *McQuiggin v. Perkins*, 569 U.S. at 386, 133 S.Ct. at 1928 ("We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations.").[22]

A habeas petitioner alleging actual innocence in this context is not necessarily entitled to an evidentiary hearing:

Neither *Pagan* [*v. Keane*, 984 F.2d 61 (2d Cir. 1992)] nor any controlling authority supports the proposition that, absent a showing of substantial support for the actual innocence claim, a habeas petitioner seeking to pass through the *Schlup* "actual innocence" gateway to have otherwise procedurally-barred habeas petition heard on its merits is entitled to an evidentiary hearing to develop the evidence necessary to establish actual innocence. While courts retain discretion to order an evidentiary hearing to assist in the development of evidence of actual innocence sufficient to

---

[22] *McQuiggin* explained the difference between equitable tolling and actual innocence in this context, namely, that equitable tolling seeks an equitable extension of the AEDPA statute of limitations, while an actual innocence claim seeks an equitable exception to the statute. *Id.*, 569 U.S. at 392, 133 S.Ct. at 1931; *see also, id.* at 569 U.S. 399, 133 S.Ct. at 1935 (Referring to actual innocence in this context as "the miscarriage of justice exception to AEDPA's statute of limitations.").

> meet the *Schlup* threshold, such a hearing is only justified if there is "substantial
> support" for Petitioner's evidence.

*Diaz v. Bellnier*, 974 F. Supp. 2d 136, 141 (E.D.N.Y. 2013) (citation omitted, collecting cases).

If the petitioner makes a colorable claim of actual innocence, the district court should make

factual findings regarding the viability of the claim, and should, where necessary, conduct a

hearing. *See, Stephenson v. Connecticut*, 639 F. App'x 742, 745 (2d Cir. 2016) ("In the face of

evidence of actual innocence sufficient to make a claim colorable (though not necessarily

successful), we have on multiple occasions remanded a case to the district court to make specific

factual findings on the record as to the viability of the claim . . . .   In accordance with this practice,

we vacate the District Court's denial of Stephenson's motion to amend and remand to the District

Court to make specific findings as to whether Stephenson has established a credible and

compelling claim of actual innocence. We further observe that it may be appropriate for the

District Court to conduct a hearing if it deems further investigation necessary to properly

ascertain the motives and credibility of Sinclair, identify, explain, and weigh inconsistencies (if

any) between the letter and Sinclair's trial testimony, and otherwise analyze and weigh the merits

of Stephenson's claim.").

In considering whether the petition is timely, the court is required by 28 U.S.C. §

2254(e)(1) to give a presumption of correctness to the state courts' factual determinations, which

may only be rebutted by clear and convincing evidence:

> When a federal court reviews the merits of a habeas petition, the "factual findings
> of the New York Courts are presumed to be correct." *Nelson v. Walker*, 121 F.3d
> 828, 833 (2d Cir. 1997) (internal quotation marks and citation omitted). This
> presumption is "particularly important when reviewing the trial court's assessment
> of witness credibility." *Cotto v. Herbert*, 331 F.3d 217, 233 (2d Cir. 2003). The
> petitioner may rebut this presumption only by clear and convincing evidence. *See*
> 28 U.S.C. § 2254(e)(1). The Court of Appeals for the Second Circuit has not
> explicitly held that this presumption of correctness that applies to a state court's

findings of fact in a district court's analysis of a petition's merits under Section 2254(e) also applies to a district court's analysis of whether a petition has met AEDPA's threshold requirements under Section 2244. *See Watson* [*v. Artuz,*] 2019 WL 762221, at *10 [(S.D.N.Y. Feb. 21, 2019)]. Several courts in this Circuit have held that the presumption of correctness codified in Section 2254(e) should apply to a court's analysis of gateway actual innocence claims in the context of Section 2244. *See Jimenez v. Lilley*, No. 16-CV-8545, 2017 WL 4535946, at *8 (S.D.N.Y. Oct. 10, 2017) (collecting cases), report and recommendation adopted, No. 16-CV-8545, 2018 WL 2768644 (S.D.N.Y. June 7, 2018) (noting that Section 2254(e) should apply "in all federal habeas corpus proceedings"); *Green v. Capri*, No. 9:17-CV-0392, 2018 WL 2452623, at *5 & n.6 (N.D.N.Y. May 31, 2018) (citing other appellate courts' application of Section 2254(e)'s presumption of correctness to procedural gateway claims of actual innocence); *Watson* [*v. Artuz,*] 283 F. Supp. 3d [217,] 234–35 [(S.D.N.Y. Jan. 30, 2018)] (same); *Watso*n, 2019 WL 762221, at *10 & n.2 (declining to decide the issue). The presumption of correctness in Section 2254(e) is not limited to a decision on the merits of the petition. Moreover, because the state post-conviction court that presided over the petitioner's Section 440.10 claim called multiple witnesses, and there has been no new testimony or hearing in this matter before this Court that would contradict the Court's findings, the state court was in the best position to analyze the credibility of the proffered testimony and facts. Accordingly, the presumption of correctness applies to the state post-conviction court's findings in this Court's analysis of whether the petitioner has met the requirements of Section 2244(b)(2) and Section 2244(d)(1).

*Cosey v. Lilley*, 460 F. Supp. 3d 346, 363–64 (S.D.N.Y. 2020) (Koeltl, J.).

With these principles in mind, the Court has examined Dean's various arguments for timeliness and finds, for reasons discussed below, that the Petition is untimely.

The Filing Deadline Was Not Statutorily Tolled Beyond February 13, 2018

The Court agrees with Respondent that Dean's filing deadline expired on February 13, 2018, and was not tolled past that date based on any pending, properly-filed post-conviction challenges to his conviction.

In that regard, the Court first finds that the statute of limitations was not tolled by Dean's application to the Court of Appeals for leave to appeal the Appellate Division's denial of leave to appeal the trial court's denial of his Second § 440.10 motion.  As mentioned earlier, Respondent

contends that the AEDPA's one-year limitations period began to run on June 2, 2016, after the Appellate Division denied Dean's request for leave to appeal.  Dean, however, maintains that the statute did not begin to run at that time, since on June 22, 2016, he filed a request for leave to appeal to the New York Court of Appeals, which was denied, on September 19, 2016, because "the order sought to be appealed from [was] not appealable under CPL 450.90(1)." *See*, Petition at p.6 & addendum ¶ 20-B; see also, ECF No. 25 at p. AF-1.  Dean further contends that after the Court of Appeals denied his request, he made another application to the Court of Appeals "challenging" its decision to deny his request, which the Court of Appeals denied on November 28, 2016.[23]  Consequently, Dean argues that the limitations period began to run after that date.

However, the Court disagrees.  As noted earlier, the limitations period is tolled while "a *properly filed* application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2) (emphasis added).  The issue here is whether Dean's applications to the Court of Appeals, on June 22, 2016, and on-or-about September 19, 2016, respectively, were "properly filed."  Dean contends that they were, citing "*People v. Jones*, 2014 WL 7069803, 2014 N.Y. Slip Op. 08760" ("*Jones* decision").  The Court, though, finds that they were not, since New York law does not allow for the applications that Dean filed following the ruling by the Appellate Division, absent permission from either the Appellate Division or Court of Appeals, which Dean never obtained:

> Petitioner's subsequent motions seeking review of his 440 motion by the Court of Appeals did not toll the statute of limitations. Tolling is only permissible when an application for post-conviction review is "properly filed." 28 U.S.C. § 2244(d)(2). A "properly filed" application is "an application for state post-conviction relief recognized as such under governing state procedures." *Hizbullahankhamon v. Walker*, 255 F.3d 65, 70 (2d Cir. 2001) (citation omitted). Petitioner's August 22, 2017 motion for leave to appeal to the Court of Appeals from the Appellate

---

[23] ECF No. 25 at p. AF-2.

Division's denial of his leave application was not "properly filed" because such denials are not appealable. N.Y. CPL § 450.90(1). *See also Brown v. Martuscello*, No. 16-CV-6084, 2019 WL 6833299, at *4 (S.D.N.Y. May 14, 2019), report and recommendation adopted, No. 16-CV-6084, 2019 WL 3491461 (S.D.N.Y. Aug. 1, 2019); *Girard v. Superintendent*, No. 17-CV-1002, 2018 WL 3579861, at *4 (N.D.N.Y. July 25, 2018); *Walker v. Graham*, 955 F. Supp. 2d 92, 101 (E.D.N.Y. 2013). The October 17, 2017 Court of Appeals decision denying Petitioner leave explained that "the application is dismissed because the order sought to be appealed from is not appealable under CPL 450.90 (1)." (ECF No. 9-12 (emphasis added).) Because the Appellate Division's underlying decision was unappealable, Petitioner also had no basis to then seek reconsideration of the dismissal. Consequently, Petitioner's motions before the Court of Appeals were not "properly filed" for purposes of AEDPA. Therefore, the limitations period was not tolled while these motions were pending.

*Burno v. Morton*, No. 19-CV-2536 (JMA), 2020 WL 1031323, at *3 (E.D.N.Y. Mar. 3, 2020), certificate of appealability denied, No. 20-1063, 2020 WL 5641100 (2d Cir. Aug. 6, 2020).[24]

Moreover, insofar as Dean contends that the New York Court of Appeals' *Jones* decision gave him the right to appeal the Appellate Division's ruling, other federal courts have already explained why that argument lacks merit:

> In New York, "any adverse or partially adverse order of an intermediate appellate court" may be "taken to the court of appeals" if "a certificate granting leave to appeal is issued pursuant to section 460.20." N.Y. C.P.L. § 450.90(1). Section 460.20, in turn, explains that a "certificate granting leave to appeal to the court of appeals ... is an order of a judge granting such permission and certifying that the case involves a question of law which ought to be reviewed by the court of appeals." N.Y. C.P.L. § 460.20. When the order sought to be appealed is an order of the Appellate Division, either a judge of the Court of Appeals or a justice of the Appellate

---

[24] *See also, Romero v. Rich*, No. 22-CV-686 (PKC), 2022 WL 1568707, at *2 (E.D.N.Y. May 18, 2022) ("Petitioner's application to the New York Court of Appeals, for leave to appeal the Appellate Division's denial of leave to appeal the trial court's § 440 decision, did not continue to toll the statute of limitations."); *Myles v. Griffin*, No. 917CV0862TJMDEP, 2018 WL 7959105, at *3 (N.D.N.Y. Oct. 30, 2018), ("Appeals to the New York Court of Appeals in cases of this nature are governed by N.Y. Criminal Procedure Law § 450.90(1). It is well-established that that section does not permit a criminal defendant to request leave from the New York Court of Appeals following the denial by the Appellate Division of such a request.") (footnote omitted), report and recommendation adopted, No. 917CV862TJMDEP, 2019 WL 1516992 (N.D.N.Y. Apr. 8, 2019).

Division may issue a certificate granting leave to appeal to the Court of Appeals. *See* N.Y. C.P.L. § 460.20(2)(a). Together, these procedural rules establish that a party cannot appeal an order of the Appellate Division to the Court of Appeals without permission.

Furthermore, an order denying a § 440.10 motion is appealable to the Appellate Division only by leave of a justice of that court granted under § 460.15. *See* N.Y. C.P.L. § 450.15(1). Absent that permission, "further appellate review is unavailable under [New York] state's procedures." *Bennet* [*v. Artuz*,] 199 F.3d [116,] 120 [(2d Cir. 1999)]. "There is no provision in New York law for an appeal to the Court of Appeals from an order denying leave to appeal from an order denying a Section 440.10 motion." *Ramos v. Walker*, 88 F.Supp.2d 233, 234 n.3 (S.D.N.Y. 2000).

*Davis* [*v. Griffin*,] 2019 WL 1384587, at *2–3 [(W.D.N.Y. Mar. 27, 2019)]. Petitioner sought leave to appeal the denial of his second 440 motion, and his application was denied by the Third Department. Petitioner did not receive permission to appeal that denial from either the Third Department or the Court of Appeals; therefore, his application to the Court of Appeals was not properly filed. *Davis*, 2019 WL 1384587, at *2. This was explicitly noted by the Court of Appeals in the decision denying the request: "[T]he order sought to be appealed from is not appealable under CPL § 450.90(1)."

Petitioner contends that the holding in *People v. Jones*, 24 N.Y.3d 623 (2014), proves otherwise. Petitioner misconstrues the Court of Appeal's holding. While *Jones* did serve to clarify and partially overturn prior precedent, it does not provide Petitioner with the proffered procedural mechanism to extend his statutory tolling. The Court of Appeals discussed, in great detail, how the enactment of New York's Criminal Procedure Law changed how criminal defendants could seek review of their state court convictions. *Jones*, 24 N.Y.3d at 627-31. Specifically, "before the enactment of CPL article 440, no statute provided for an appeal to [the Court of Appeals] in postjudgment proceedings," instead, the Court of Appeals established a "hands-off approach ... and imposed a limitation on [its] power of review." *Id*. at 627–28. However, in *Jones*, the Court of Appeals explained that just "because lower courts have 'unlimited' discretion in deciding whether a defendant is entitled to vacatur of judgment and a new trial based on newly discovered evidence, their determination is [not] somehow beyond reproach." *Id*. at 629. Thus, the Court of Appeals held that, now that the provisions of the Criminal Procedure Law provided criminal defendants with procedural mechanisms to challenge their postjudgment proceedings, "defendants whose newly discovered evidence motions are

summarily denied by the lower courts should have the opportunity, within the strictures of CPL 450.90(1), to have those determinations reviewed under [an] abuse of discretion standard[.]" *Id.*

Petitioner's present argument seeks to avoid those procedural strictures outlined above. As stated by *Jones*, Petitioner had to follow the appeal options provided to him in the Criminal Procedure Law and, as outlined by the *Davis* decision, in order to continue the statutory tolling and bring his claims before the Court of Appeals, Petitioner required permission from either a judge on the Court of Appeals or a justice from the Third Department. He had neither. Therefore, his appeal did not comply with the appropriate appeal mechanisms available in the Criminal Procedure Law and it was dismissed.  Petitioner's "futile attempt to appeal to the Court of Appeals the [Third] Department's denial of leave to appeal did not toll the limitations period because there was no longer a properly filed application pending." *Davis*, 2019 WL 1384587, at *2 (internal quotation marks omitted).

*Coleman v. Melecio*, No. 9:20-CV-0105 (LEK), 2021 WL 638272, at *3–4 (N.D.N.Y. Feb. 18, 2021).

Consequently, where, as here, the Appellate Division denies a defendant's application for leave to appeal from a denial of a Section 440.10 motion, the AEDPA limitations period begins to run from the date of the Appellate Division's decision, regardless of whether the defendant attempts to seek further review from the New York Court of Appeals:

Under New York law, a petitioner may seek leave to appeal a trial court's denial of a 440.10 post-conviction motion to the Appellate Division under CPL Section 450.15. *See Klein v. Harris*, 667 F.2d 274, 283-84 (2d Cir. 1981), *overruled on other grounds by Daye v. Attorney Gen. of State of N.Y.*, 696 F.2d 186, 195 (2d Cir. 1982) (en banc); see also Friedman v. Rehal, 618 F.3d 142, 152 (2d Cir. 2010). However, if a justice of the Appellate Division denies a certificate for leave to appeal pursuant to New York Criminal Procedure Law Section 460.15, a petitioner may not appeal to the Court of Appeals. "Thus, once the Appellate Division denied [the petitioner] leave to appeal the denial of his section 440.10 motion, he had reached the end of the road within the state system." *Klein*, 667 F.2d at 284 (internal quotation marks and citation omitted). Accordingly, "for purposes of calculating the tolling provision of § 2244(d)(2), AEDPA's one year statute of limitations is tolled from the date a petitioner files his ... 440.10 motion until the date the Appellate Division denies the petitioner leave to appeal [the] decision [on

the 440.10 motion]." *Wilkins v. Kirkpatrick*, No. 06-CV-2151, 2009 WL 3644082, at
*7 (S.D.N.Y. Nov. 4, 2009).

*Cosey v. Lilley*, 460 F. Supp. 3d 346, 370 (S.D.N.Y. 2020).

Dean alternatively argues that his Article 78 motions and FOIL requests tolled the
limitations period.  However, as already stated, FOIL requests and Article 78 motions seeking
records do not toll the AEDPA limitations period. *See, Stein v. Stallone*, 2019 WL 5578236, at
*7 ("The FOIL requests and related Article 78 petitions that petitioner filed between 2006 and
2014 seeking documents do not toll the limitations period. *See Hodge v. Greiner*, 269 F.3d 104,
107 (2d Cir. 2001)."); *see also, Pleasant v. Capra*, No. 116CV09842LAPSDA, 2018 WL
9539170, at *6 (S.D.N.Y. Aug. 1, 2018) ("Courts in this District have rejected the claim that the
limitations period be equitably tolled during the pendency of a petitioner's request pursuant to
New York's FOIL.  . . .  [T]he filing of FOIL requests do not constitute applications for State post-
conviction or other collateral review within the meaning of § 2244(d)(2).") (citations and internal
quotation marks omitted), report and recommendation adopted, No. 16-CV-9842 (LAP), 2018
WL 9539116 (S.D.N.Y. Sept. 6, 2018).

Dean further appears to argue that two additional post-conviction motions he filed tolled
the statute.  As mentioned earlier, those are a "Motion for New Trial of Arrest of Judgment" filed
with the Ontario County Supreme Court on April 27, 2015, and a "Motion to Inspect Grand Jury
Minutes and Dismiss Indictment Pursuant to NYS CPL § 210.20," allegedly filed with the Ontario
County Supreme Court on May 15, 2016, both of which Dean maintains are still pending.
However, Dean's argument on this point lacks merit, since the first "motion" was denied long
ago, and the second was never properly filed.

As to the first such motion, Ontario County Court records show no motion for a new trial
having been filed by Dean on April 27, 2015.  However, Dean's exhibits demonstrate that a letter-

motion for a new trial he submitted bearing that date was eventually denied by Judge Doran on January 26, 2016, along with several other applications.   Specifically, on January 26, 2016, Judge Doran issued a Decision and Order denying a CPL § 440.10 motion by Dean dated October 27, 2014, which Dean had "amended" with various submissions, including a "'Notice of Motion for New Trial' dated April 27, 2015." *See*, ECF Nos. 25-3 and 26-3 at pp 156-162.[25]   In sum, rather than treating Dean's new-trial request dated May 27, 2015, as a separately-filed motion, Judge Doran treated the submission as an amendment to the 440.10 motion, which he denied "in all respects." *Id*.   In doing so, Judge Doran found that Dean had not shown that the police or prosecution had used false evidence to convict him. *Id*.   On these facts it is evident that the "motion" was never treated by the state court as a separately filed attack on Dean's conviction, such as would toll the statute.[26]   Moreover, even if it were treated as such a motion, the application is not still pending, contrary to what Dean claims, and did not toll the limitations period beyond February 13, 2018.

As for the second motion, Ontario County records are similarly devoid of any reference to Dean filing a "Motion to Inspect Grand Jury Minutes and Dismiss Indictment Pursuant to NYS CPL § 210.20" with the Ontario County Supreme Court on May 15, 2016,[27] nor is there any indication that Judge Doran ever ruled on such a request.   At most, the record contains a copy of a letter that Dean purportedly sent to Judge Doran on September 16, 2016, inquiring about such an application. *See*, ECF Nos. 25-3 & 26-3 at p. 136 ("I sent the Court a motion on May 15, 2016 pursuant to CPL § 210.20.").   However, Dean was aware when he filed the instant

---

[25] A handwritten notation on the exhibit appears to indicate that Dean received the Decision and order on January 29, 2016.

[26] This is consistent with the fact that Dean did not list this application in the Petition.

[27] This fact is shown by Dean's own exhibits, which include a printout of all documents he filed in his criminal action in Ontario County.   The Court's staff also contacted the Ontario County Clerk's Office by telephone and confirmed that there is no record of Dean filing such a motion.

habeas Petition that Ontario County had no record of such a filing, as shown by the printout of

Dean's state-court filings attached to the Petition. ECF No. 1-2 at p. 62.  This is consistent with

the fact that Dean did not list such a motion in the Petition.  In any event, the AEDPA limitations

period is tolled only by properly filed applications, and the purported "§ 210.20 motion" was not

properly filed for purposes of tolling the statute since the state court has no record of it.[28]

Finally, on this point, the 440.10 motion that Dean filed on May 4, 2018, did not toll the

limitations period because the one-year limitations period had already expired on February 13,

2018.  Consequently, for the various reasons just discussed the Petition is not timely based on

statutory tolling.

Equitable Tolling Does Not Apply

Dean alternatively maintains that the limitations deadline should be extended due to

equitable tolling.  As discussed earlier, Dean alleges the officials at Attica, as well as the police,

prosecutor and trial judge, hindered his efforts to file the Petition in a timely manner.  However,

the Court again disagrees.

Firstly, Dean has not shown that officials at Attica prevented him from filing his habeas

petition in a timely manner.  In that regard, Dean implies that he could have filed his Petition in

January 2018, which would have been timely, but for interference by officials at Attica, who failed

to properly respond to his request for a financial certification.  However, Dean's assertion in that

regard is vague and also disproven by exhibits attached to the Petition showing that Dean was

still working on the Petition as late as June 2018, almost four months after the AEDPA filing

deadline had expired. *See*, ECF No. 1-2 at p. 226 (Letter dated June 7, 2018, addressed to Joey

Clinton, DSP, Attica); *see also, id*. at pp. 227-241 (discussing Dean's efforts in June 2018 and

---

[28] On this point, in addition to the record, the Court's staff also confirmed with staff at the Ontario County Courthouse Clerk's Office that there is no record of such an application.

July 2018 to complete the habeas petition).  Moreover, the Petition was not signed by Dean until August 13, 2018.  Dean's alternate contention that the police, prosecutor and trial judge acted improperly and thereby hindered his efforts to gather evidence of his innocence is similarly vague and unsubstantiated.  Consequently, the Court finds that Dean has not made the required showing for equitable tolling to apply. *See, Dillon v. Conway*, 642 F.3d at 362 ("§ 2244(d) may be tolled only if the petitioner shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.") (citation and internal quotation marks omitted).

<u>Dean Has Not Made a Gateway Showing of Actual Innocence</u>

Finally, Dean's papers contain protestations of innocence that the Court liberally construes as attempting to assert a gateway showing of actual innocence.  As discussed already, such a showing would excuse Dean from complying with the AEDPA statute of limitations. However, Dean does not come close to making the demanding showing required for the exception to apply.  Dean has not come forward with new, credible evidence of factual innocence, as opposed to mere legal insufficiency, that would cause the Court to question the outcome of the trial, or that could establish that any reasonable juror would have reasonable doubt about his guilt.  Rather, Dean essentially argues about the weight of the evidence and, alternatively, unconvincingly maintains that he was convicted either because of a concerted effort by the police, prosecutor and trial judge to railroad him, or because his attorney failed to obtain suppression of evidence connecting him to the crimes. [29]  On the other hand, there appears to be very strong, if not overwhelming, circumstantial evidence of Dean's actual guilt.

---

[29] The Court's characterization on this point is based on its review of the voluminous exhibits attached to the Petition and over twelve-hundred additional pages of documents that Dean filed in opposition to Respondent's motion. *See*, ECF Nos. 25 & 26.

Consequently, the Court finds that Dean has not made a gateway showing of actual innocence.

The Petition is Untimely

For the various reasons discussed above the Court finds that the Petition is untimely, since it was filed six months beyond the applicable AEDPA deadline of February 13, 2018, and no equitable extension or exception applies.  Accordingly, the Petition is dismissed.

CONCLUSION

The application under 28 U.S.C. § 2254 is dismissed.  The Clerk of the Court is directed to close this case. Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since it does not find that reasonable jurists would find debatable that the Court is correct in its procedural ruling that the Petition is untimely.[30]  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated: Rochester, New York
       July  27, 2022                              ENTER:


                                        CHARLES J. SIRAGUSA
                                        United States District Judge

---

[30]*See, Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) ("Where, as here, the denial of the habeas petition is based upon procedural grounds, the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, and (2) that the applicant has established a valid constitutional violation.").